UNITED STATES, Appellee,

v.

Michael A. ORBEN, Sergeant, U.S. Air
Force, Appellant.

No. 59,340.
ACM 25865.

U.S. Court of Military Appeals.

June 5, 1989.

For Appellant: *Captain Laurence M. Soybel* (argued); *Colonel Richard F. O'Hair* (on brief); *Colonel Leo L. Sergi.*

For Appellee: *Captain Jeffrey H. Curtis* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

A military judge, sitting as a general court-martial at Grand Forks Air Force Base, North Dakota, tried appellant on a charge that from October 1, 1985, to November 15, 1985, he committed sodomy with a child under the age of 16 years, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925, and that he had been guilty of various types of indecent conduct with minors, in violation of Article 134, UCMJ, 10 USC § 934. Orben was acquitted of the sodomy but found guilty of all four specifications under the other Charge. These were:

| Spec | Summary of Offense |
|---|---|
| 1 | From September 15, 1985, to January 11, 1986, he committed indecent acts upon the body of Thomas Thorp, a male under 16 years of age, by placing his hands on his legs, thighs, and private parts and kissing his mouth "with intent to arouse, appeal to, and gratify the lust, passion and sexual desires of" appellant and Thorp; |
| 2 | From August 1, 1985, to October 31, 1985, he orally communicated to Mario Perez, a child under 16, "certain indecent language, to wit: that there was no difference between a man's anus and a woman's vagina when sexual intercourse is involved, and that if" Mario Perez "were in prison for three years he would make love to a man, or words to that effect"; |
| 3 | Between July 1, 1985, and August 31, 1985, he took "indecent liberties with Eric Hricak, a male under" 16, "by showing ... [him] several magazines containing numerous pictures depicting the full body nudity of adults and children, with intent to arouse and appeal to the lust, passion and sexual desires of" Hricak and Orben; |
| 4 | Between July 1, 1985, and August 31, 1985, he "committ[ed] an indecent act upon the body of Eric Hricak, a male under 16 years of age .... by placing his hand on his upper leg, with intent to arouse, appeal to, and gratify the lust, passion, and sexual desires of" Hricak and appellant. |

The military judge sentenced Orben to a dishonorable discharge, confinement for 1 year, total forfeitures, and reduction to the lowest pay grade. The convening authority approved this sentence; and the Court of Military Review affirmed the findings and sentence. We granted review on these two issues:

I

WHETHER APPELLANT'S CONDUCT OF DISPLAYING A NONPORNO-GRAPHIC MAGAZINE TO ERIC HRICAK CONSTITUTED THE TAKING OF INDECENT LIBERTIES IN VIOLATION OF ARTICLE 134.

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED BY NOT FULLY COMPLYING WITH HIS REQUEST FOR SPECIAL FINDINGS.

The offenses of which Orben was convicted all involved dependent children of servicemembers assigned to Grand Forks Air Force Base, where appellant had arrived in July 1985. According to the government evidence, two months later he met Thomas Thorp, then 14 years old, at the video-arcade section of the base bowling alley. Thorp testified that he had seen Orben on various occasions thereafter. On one outing together, appellant had showed him magazines[1] which Thorp described as "dirty" and which contained pictures of totally nude people. Orben had stated that these magazines came from Europe. On various occasions appellant had grabbed Thorp's inner thigh; and once he had kissed him on the lips.

Mario Perez, a 13-year old whom Orben had met at the video arcade also, testified that he had seen appellant there three or four times a week. Orben had used language like that alleged in specification 2; and on one occasion, he had placed his hand on Mario's thigh and begun to rub it. Also, on one trip, Orben had displayed to Mario three magazines[2]—one of which had on the

1. This evidence was offered over objection as uncharged misconduct tending to support the allegations of specification 3 involving Eric Hricak.

2. See n.1., *supra.*

cover "a naked boy" who appeared to be 10 to 12 years old and did not have much pubic hair. In looking through this magazine, Mario had seen several naked people, who ranged "[f]rom very young to about my age and older." About half the pictures he saw were of males, and the other half were of females.

Eric Hricak testified that he had been 12 years old when he had met Orben at the video arcade in July 1985. Appellant had taken him to the base movie theater a couple of times. Once while Eric was in appellant's car, the latter had placed his hand on Eric's inner thigh.

On another occasion, Eric and a friend of his were sitting with Orben in his car when appellant had produced a *Playboy* magazine and showed it to them. Eric had seen pictures of a woman nude from the waist up. On another occasion, while alone with Orben in his car, appellant had pulled out a magazine which he had stated was German, opened it up, and given it to Eric. He had seen "kids standing there naked" who had appeared "younger than" himself. Their genitals had been fully displayed in the magazine's pictures.

I

At trial and on appeal, Orben has contested the sufficiency of the allegations in specification 3 and the evidence offered in its support. In appellant's view, he could not properly be convicted of indecent liberties with Eric Hricak because the magazines which he showed Eric and the pictures therein were not pornographic or obscene. Moreover, appellant insists that showing these magazines to children was constitutionally protected conduct under the First Amendment.

According to the Manual for Courts–Martial, United States, 1984, the crime of taking indecent liberties with a child must be proved by evidence that the accused committed a certain act in the presence of a child under 16 years of age, which amounted to the taking of indecent liberties with the child and was "with intent to arouse, appeal to, or gratify the lust, passions, or

sexual desires of the accused, the victim, or both." *See* para. 87b(2)(e), Part IV. The discussion in the Manual for Courts–Martial, United States, 1969 (Revised edition), was to the same effect. *See* para. 213*f*(3).

In *United States v. Scott*, 21 MJ 345 (CMA 1986), we considered whether showing two young girls "a magazine designed to appeal to the prurient interest" might constitute a violation of Articles 133 and 134, UCMJ, 10 USC §§ 933 and 934, respectively. First, we reaffirmed "that the offense of taking indecent liberties with a child may be committed without any physical contact or touching." 21 MJ at 348. *See also United States v. Brown*, 3 USC-MA 454, 13 CMR 10 (1953). Next, we concluded that "showing a child pornographic pictures" can authorize a conviction for "taking indecent liberties" with a child because of the strong "policy of protecting the morals of children." *Id.* at 349 (footnote omitted). Finally, we held that Scott's "first amendment right to communicate with others" had not been infringed because "the right to communicate to children of tender ages is less extensive than the right to communicate to adults. *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)." 21 MJ at 349.

Because our opinion in *Scott* referred to "pornographic pictures," *see* 21 MJ at 349, appellant now contends that only a display of such pictures constitutes indecent liberties and that a display of pictures which cannot be classified as "pornographic" or "obscene," *see* 21 MJ 349 n. 3, does not constitute taking indecent liberties.

■ We reject this contention. In our opinion, a display of pictures of nude persons to young children may constitute taking indecent liberties with them if the prohibited intent exists. Thus, even displaying to a child a nude body on an anatomical chart or pictures of nude aborigines in the *National Geographic* magazine might constitute taking indecent liberties, if accompanied by behavior and language· of an accused which demonstrated his intent to

arouse his own sexual passions, those of the child, or both.

Insofar as First–Amendment rights are concerned, we rely on the Supreme Court's conclusion in *Ferber* that the right to communicate to young children may be restricted. Thus, courts have upheld various types of statutes and ordinances designed to prevent the exposure of minors to sexually-oriented material. *See, e.g., Upper Midwest Booksellers Association v. City of Minneapolis*, 780 F.2d 1389 (8th Cir.1985); *M.S. News Co. v. Casado*, 721 F.2d 1281 (10th Cir.1983). Also, Congress has enacted legislation which limits distribution of pornography to children. Child Protection Act, Pub.L.No. 98–292, 98 Stat. 204 (1984), amending 18 USC § 2251.

Even adults can be protected against exposure to obscenity; and to hold that a servicemember may be tried for indecent liberties only if he has displayed obscene materials to a child is to say that a child can be provided no greater protection than an adult. We do not believe this is sound. Children are entitled to develop without premature exposure to materials which arouse their sexual passions. Consistent with this policy, Eric Hricak was entitled to protection from appellant's display of magazines to him when, as here, the display was accompanied by the proscribed intent.

## II

At trial, defense counsel requested that the military judge enter a number of special findings. Under Article 51(d) of the Uniform Code, 10 USC § 851(d), and RCM 918(b), 1984 Manual, *supra*, a military judge is obligated to find the facts specially, if he is requested so to do. *See also United States v. Gerard*, 11 MJ 440 (CMA 1981). However, "[s]pecial findings may be requested only as to matters of fact reasonably in issue as to an offense." RCM 918(b).

In our opinion, neither the Code nor the Manual contemplate that a military judge could be required by counsel to analyze in detail the evidence which led to certain findings or to justify the findings which were made. In this case, the defense request (*see Appendix* A) went too far and sought to require the judge to write a brief in support of the findings he had made.

In some instances, the requests were predicated on an erroneous premise. For example, the defense asked the judge: "What evidence did you rely on in determining local community standards as it pertains to 'indecent' verbal communication?" If it were required that the language used by appellant be "obscene" in order to justify conviction on specification 2, it might be necessary for the Government to prove what the local community standards are—just as it might be required in an obscenity prosecution. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The same observation applies to this defense request for a finding on specification 3: "What evidence did you rely on in determining local community standards as it pertains to written or pictorial materials?" Since it was not necessary for the Government to prove obscenity, denial of these requests was proper.

In our view, some of the requests for special findings were really requests that the military judge recapitulate all the evidence or summarize all the evidence on which he relied. Such requests need not be granted. The findings made by the judge (*see* Appendix B) were sufficient to permit an informed appellate review of this case. Under the circumstances here, no further findings were required.

## III

We conclude that the evidence was sufficient to sustain all the findings of guilty; that appellant's First–Amendment rights were not violated; and that no prejudicial error occurred.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

## APPENDIX A

Concerning Specification 2, Charge II

1. What facts do you find that establish beyond a reasonable doubt that the language in question is "indecent"?

2. What evidence did you rely on in determining local community standards as it pertains to "indecent" verbal communication?

3. What facts establish that the First Amendment right of free speech was not a defense to the specification?

4. What facts establish beyond a reasonable doubt that the specification serves to give a libidinous message?

5. What facts establish beyond a reasonable doubt that the accused's conduct was to the prejudice of good order and discipline or was of a nature to bring discredit upon the armed forces?

Concerning Specification 3, Charge II

1. What facts do you find that establish beyond a reasonable doubt that the accused took indecent liberties with Eric Hricak?

2. What facts do you find which indicate "full body nudity of adults and children" are indecent?

3. What evidence did you rely on in determining local community standards as it pertains to written or pictorial materials?

4. Without viewing the "indecent" materials, what facts establish beyond a reasonable doubt that the materials are indecent?

5. What facts establish that the First Amendment right of free speech/expression was not a defense to the specification?

6. What facts establish beyond a reasonable doubt that the accused intended to arouse and appeal to the lust, passion and sexual desires of Eric Hricak and himself?

7. What facts establish beyond a reasonable doubt that the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces?

Concerning Specification 4, Charge II

1. What facts establish beyond a reasonable doubt that the accused committed an indecent act on Eric Hricak?

2. What facts establish that the touching was not the product of a friendship or horseplay between Eric Hricak and the accused?

3. What facts establish intent to arouse, appeal to, and gratify the lust, passion, and sexual desires of Eric Hricak and the accused?

4. What facts do you find that make the testimony of Eric Hricak truthful?

Concerning Specification 1—Charge II

1. What facts establish beyond a reasonable doubt that the accused committed an indecent act on Thomas C. Thorp?

2. What facts establish that the touching and kissing was not the product of a friendship or horseplay between Thomas C. Thorp and the accused?

3. What facts establish intent to arouse, appeal to, and gratify the lust, passion, and sexual desires of Thomas C. Thorp and the accused?

4. What facts do you find that make the testimony of Thomas C. Thorp truthful?

## APPENDIX B

United States

v.

Sgt Michael Orben, FR293–64–9661

321 Services Squadron

Grand Forks AFB, N.D.

SPECIAL FINDINGS

Charge II, Specification 1

By Elements

1. I find that near Grand Forks AFB in September, 1985, the accused placed his hand on Thorp's leg while traveling in the accused's automobile. (R. 40) I find that approximately a week later, still in September, the accused kissed Thorp on the mouth in the restroom of a theatre in the town of Grand Forks near Grand Forks AFB. (R. 50,53). The accused put his hand on

Thorp's leg in the same theatre on the same date. (R. 54). He continued this conduct although Thorp moved his leg. (R. 55). Approximately one week later, in October 1985, Thorp again accompanied the accused to town (R. 56), where accused kissed Thorp on the lips in a pizza parlor bathroom (R. 57). Later the same day the accused kissed Thorp on the lips in a theatre bathroom. (R. 61). The accused put his hand on Thorp's leg on the way home in accused's car. (R. 73).

The accused visited Thorp at Thorp's home in December 1985 (R.75) and while there grabbed Thorp's penis through Thorp's clothing. (R. 76).

The accused visited Thorp at Thorp's in early January 1986 (R. 73–74) where he kissed Thorp on the mouth in the basement. (R. 79).

2. I find that Thomas Thorp was a male person, not the spouse of the accused under the age of 16 years. (R. 36, 38).

3. I find that the acts of the accused, as portrayed upon the entire record were in fact indecent. In so finding I have consulted my common sense and my knowledge of the ways of the world. These acts were depraved, grossly vulgar, obscene and repugnant to common propriety and tended to excite lust and deprave morals with respect to sexual relations.

4. I find upon a reading of the entire record as it pertains to these acts that the intent of the accused was totally unambiguous. I find his intent clearly was to appeal to and gratify the lust, passions and sexual desires of both the accused and his victim, Thomas Thorp.

5. I find that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the service and was of a nature to bring discredit upon the armed forces.

### Charge II, Specification 2

#### By Elements

1. I find that in August 1985, (R. 190) when the victim, Mario Perez, was under the age of 16 years (R–190) the accused spoke to him at the bowling alley on Grand Forks AFB. (R. 191). The accused stated, in effect, that there was no difference between a woman's vagina and a man's anus when sexual intercourse is involved and further stated in effect that if the victim were even in prison for 3 years, he, the victim, would commit anal sodomy also. (R. 192).

2. I find the language was indecent, being grossly offensive to the community sense of modesty, decency or propriety. I find it shocks the moral sense because of its vulgar, filthy and disgusting nature. I find that it is particularly odious to invite a child of tender years to contemplate himself committing anal sodomy. I find language from an adult to a child of tender years, as in this case, suggesting no difference between anal sodomy and heterosexual intercourse to be dangerously indecent in that the child may dwell upon this perverted suggestion and speculate as to its merit.

3. I find that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the service and was of a nature to bring discredit upon the armed forces.

### Charge II, Specification 3

#### By Elements

1. I find that at Grand Forks AFB, N.D. in the period July–August, or early September 1985, (R. 250, 254) the accused showed Eric Hricak several magazines showing full body nudity of adults and children. (R. 259, 262).

2. I find that Eric Hricak was a male person not the spouse of the accused under the age of 16 years, (R. 250), being 12 years of age at the time of the offense.

3. I find that the act amounted to the taking of indecent liberties with the victim.

4. I find that the accused committed the act with the intent to arouse and appeal to the lust, passions and sexual desires of the accused and the victim.

5. I find that the act was committed in the presence of the victim. (R. 259, 262)

6. I find that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the service and was of a nature to bring discredit upon the armed forces.

### Charge II, Specification 4

### By Elements

1. I find that at Grand Forks AFB, N.D. in the period July–August, or early September 1985, (R. 254) the accused placed his hand on Eric Hricak's upper leg. (R. 258).

2. I find that the victim was a male person, not the spouse of the accused, under the age of 16 years, being 12 years of age at the time of the offense. (R. 250).

3. I find from the evidence of the event and the circumstances that the act of the accused was indecent.

4. I find that the accused committed the act with the intent to arouse, appeal to and gratify the lust, passions and sexual desires of the accused and the victim.

5. I find that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the service and was of a nature to bring discredit upon the armed forces.

### Summation

I found the accused guilty beyond a reasonable doubt as to each and every element of each and every offense under Charge II based on the legal and competent evidence admitted and the reasonable inferences to be drawn therefrom.

S/

CHARLES W. FOWLER, Colonel, USAF
Chief Circuit Military Judge

Date: 18 Feb 87